[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-12017

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MATTHEW TASSIN,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:19-cr-80064-RAR-1

————————————————

Before ROSENBAUM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Matthew Tassin appeals his two convictions and sentences for distribution and possession of child pornography. On appeal, Tassin argues that the district court (1) abused its discretion by not *sua sponte* inquiring into his competence; (2) erred by determining that it lacked authority to consider new sentencing objections when the district court resentenced him; (3) plainly erred by imposing a procedurally unreasonable sentence because it applied two unnecessary enhancements; (4) abused its discretion by imposing a substantively unreasonable sentence; and (5) plainly erred by applying certain special conditions of supervised release. After review, we affirm the district court's rulings.

## I.    BACKGROUND

### A. Offense Conduct

In January 2019, an undercover agent working with the FBI Child Exploitation Task Force was on "KiK," an online social networking chat application, in a chatroom by and for people who wanted to trade and access child pornography. The agent identified a user, "Mike T," who was later revealed to be Tassin. The agent observed another KiK user tell Tassin that he would be removed if he did not post "material." Because Tassin did not post anything, he was subsequently removed from the room. When

Tassin re-entered the room, he posted a hyperlink to a separate website, which had a folder titled "Cindy" that included six subfolders, each containing images and videos of child pornography.

Through KiK and Comcast, the FBI located Tassin's residence in Palm Beach Gardens, Florida, and agents executed a search warrant in April 2019. In an interview with law enforcement, Tassin admitted (1) he shared and received child pornography; (2) he generally searched for girls 12 years old and younger; (3) he would use those images to trade with other KiK users in the group; (4) he was addicted to child pornography and beer; and (5) he would watch child pornography and communicate with other KiK users about child pornography in his "beer room" or "man cave," a room in his house with a television and thousands of empty beer cans piled several feet high.

An examination of Tassin's phone identified hundreds of communications with other KiK users as well as child pornography images and videos sent and received in a group called "Tween Share Safe Room." Specifically, Tassin distributed three videos of a 12- to 13-year-old girl being sexually abused by an adult male. His phone contained 123 child pornography videos, 21 child pornography photographs, 1 video containing child pornography bondage, and 2 videos of child pornography where the victims were under the age of 5. Two of the victims in the videos and photographs on Tassin's phone were identified by the National Center for Missing and Exploited Children. Further, Tassin's

custom computer tower discovered at his residence also contained child pornography.

### B.  Indictment & Plea

A grand jury charged Tassin with (1) 2 counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1) (Counts 1 and 2); and (2) 1 count of possession of material involving the sexual exploitation of minors under 12 years old, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count 3). Pursuant to a written plea agreement, Tassin pled guilty to Counts 2 and 3, in exchange for the dismissal of Count 1.

During the plea colloquy and while Tassin was under oath, Tassin confirmed that he (1) had never been treated for any mental illness or alcohol addiction; (2) was not under the influence of any drugs or alcohol; (3) had not ingested any drugs or alcohol in the last 48 hours; and (4) was not currently under the care or treatment of any physician, psychologist, or psychiatrist.  The district court then inquired into Tassin's ability to understand the plea colloquy:

> THE COURT: And do you believe that you have a physical or mental condition or illness which would prevent you from understanding what is happening here today?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you understand everything I'm saying and everything that's going on here today?
>
> THE DEFENDANT: Yes, sir.

THE COURT: Does defense counsel agree to the competency of Mr. Tassin to enter this plea?

[DEFENSE COUNSEL]: Yes, Your Honor, I so agree.

The district court also confirmed that Tassin had reviewed and discussed the indictment with his attorney and that Tassin was fully satisfied with his attorney's representation.

The government read the elements of Counts 2 and 3, and defense counsel agreed that the government correctly stated the elements of both charges. Tassin confirmed that he and his counsel went through the charges, the elements of those charges, and the possible penalties and sentencing guidelines—including the five-year mandatory minimum sentence for Count 2.

The district court went over the written plea agreement with Tassin, who confirmed that he understood it in its entirety and had discussed it with his attorney. Tassin also stated that he understood the statutory penalties and maximum prison terms for each count. The district court also confirmed that Tassin had signed and reviewed the factual proffer, which Tassin agreed was an adequate recitation of the facts.

Having concluded that Tassin was fully competent and capable of entering into the plea agreement and aware of the nature of the charges and consequences of his plea, the district court accepted Tassin's guilty plea to Counts 2 and 3 of the indictment.

### C. Presentence Investigation Report

Tassin's presentence investigation report ("PSI") grouped Counts 2 and 3. Tassin's PSI calculated a total offense level of 37, using: (1) a base level offense of 22 under U.S.S.G. § 2G2.2(a)(2) because the offense involved the distribution of child pornography; (2) a two-level increase under § 2G2.2(b)(2) because the material involved a minor under 12 years old; (3) a five-level increase under § 2G2.2(b)(3)(B) because Tassin distributed child pornography in exchange for valuable consideration—i.e., access to certain chatrooms and other child pornography; (4) a four-level increase under § 2G2.2(b)(4)(A) because the offense involved material that portrayed sadistic or masochistic conduct; (5) a two-level increase under § 2G2.2(b)(6) because the offense involved the use of a computer for the possession, transmission, receipt, or distribution of the material; (6) a five-level increase under § 2G2.2(b)(7)(D) because the offense involved 600 or more images; and (7) a three-level decrease under § 3E1.1(a)–(b) for acceptance of responsibility.

Because Tassin had no criminal history, he had a criminal history category of I. Based on a total offense level of 37 and a criminal history category of I, the advisory guidelines imprisonment range was 210 to 262 months. For Count 2, the statutory range of imprisonment was 5 to 20 years, and for Count 3, the statutory maximum term of imprisonment was 20 years. The statutory requirements and guidelines range for supervised release was five years to life for both counts.

The PSI also recommended special conditions for Tassin's supervision. In relevant part, the PSI recommended that Tassin (1) submit to periodic unannounced examinations of his computer equipment; (2) be prohibited from possessing or using any data encryption technique or program; (3) be prohibited from possessing or using a computer that contained an internal, external, or wireless modem without court approval; (4) allow his computer related restrictions to be disclosed to any employer or potential employer; and (5) be prohibited from possessing or exchanging any visual depictions of minors or adults engaged in sexually explicit conduct.

The PSI also noted that Tassin had reported that he was healthy, had no history of mental or emotional problems, and was not taking any prescription medication. The PSI reported that Tassin (1) began drinking at the age of 16; (2) was drinking at least a 12 pack of beer every day for the past 5 years; and (3) had no history of prior substance abuse treatment but was interested in treatment while incarcerated.

Tassin filed no objections to the PSI. Rather, Tassin filed a written motion for a downward departure in the offense level calculation on the basis that the two-level enhancement for his offenses involving the use of a computer was cumulative and unnecessary because possessing and distributing child pornography cannot be accomplished without a computer.

### D. Sentencing

At sentencing, the district court noted and both parties confirmed that there were no objections to the advisory guidelines range calculations of 210 to 262 months' imprisonment. The district court adopted the PSI "without objections."

As to Tassin's downward departure motion, the district court acknowledged that the vast majority of these child pornography offenses are committed by computer but denied the motion because the offense could be committed without the use of a computer.

Tassin also orally requested a downward variance because he had no criminal history, his family supported him, and he cooperated with the government. Moreover, Tassin noted that he would be amenable to mental health counseling. The government responded that its recommendation was on the low end of the guidelines followed by at least 20 years of supervised release. Turning to the § 3553(a) factors, the government pointed out that Tassin had well over 100 photos and videos of child pornography, and he traded those images and videos like baseball trading cards.

Tassin then addressed the district court and apologized to the court, the government, and his family. The district court acknowledged that Tassin consistently had shown remorse, had no criminal history, and had the decency to bring in half of the restitution payments owed to the two identified victims. Ultimately the district court, however, found no variance was

warranted because (1) Tassin preyed on children; (2) Tassin had 123 child pornography videos, including bondage and victims under the age of 5; and (3) two of the victims were identified by the National Center for Missing and Exploited Children.

The district court sentenced Tassin to 240 months' imprisonment as to Counts 2 and 3, to be served concurrently, and 15 years of supervised release following his imprisonment term.  As to the conditions of his supervised release, the district court, in relevant part, ordered that Tassin be subject to certain special conditions, including permissible computer examinations, employer computer restriction disclosures, data encryption restrictions, computer modem restrictions, and a prohibition on the possession of materials that depict minors or adults engaged in sexually explicit conduct.  Tassin did not object to the sentence, but successfully requested that he be ordered to attend a 500-hour drug class because of his alcohol abuse.

### E.  28 U.S.C. § 2255 Motion

Just under a month after sentencing, Tassin filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence, alleging, *inter alia*, his counsel failed to file a notice of appeal despite Tassin's instructions to do so.  The district court granted Tassin's § 2255 motion[1] so he could pursue an out-of-time appeal pursuant to

---

[1] The district court dismissed the remaining claims raised in the § 2255 motion without prejudice and denied as moot any pending motions.

*United States v. Phillips*, 225 F.3d 1198 (11th Cir. 2000), appointed new counsel, and scheduled a resentencing hearing.

### F. Objections to the PSI Before Resentencing

Prior to resentencing, Tassin filed three objections to the PSI. At the outset, Tassin noted that under *Phillips*, when the remedy is an out-of-time appeal, the Court should vacate the judgment, impose the same sentence, and advise the defendant of his rights to appeal and the time limit for doing so. *See Phillips*, 225 F.3d at 1201. Nonetheless, Tassin asked the district court to consider new objections.

First, Tassin objected to the application of the five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for distributing child pornography in exchange for valuable consideration other than pecuniary gain. Specifically, he argued that posting a hyperlink did not constitute distribution for valuable consideration because a hyperlink was not child pornography, and he did not receive child pornography from the chatroom.

Second, Tassin objected to the four-level increase under U.S.S.G. § 2G2.4(b)(4)(A) for material portraying sadistic or masochistic conduct, contending only that the government never proved any facts that would support the increase. Third, he objected to certain special conditions of his supervised release as overbroad, namely the prohibition from possessing or using any data encryption technique or program, the employer disclosure

requirement, and the prohibition on possession of material that depicts adults engaged in sexually explicit conduct.

The government responded that Tassin was prohibited from filing new objections to the PSI under *Phillips* because the resentencing was not an opportunity to litigate issues, but to allow the opportunity to appeal his original judgment.

### G. Resentencing

At resentencing, the district court noted that it was holding the hearing pursuant to *Phillips*, which meant that the same sentence would be reimposed, and the hearing would be "somewhat of a mechanical exercise" without "a true full review of the PSI."

The district court noted that Tassin had filed new objections to the PSI, but Tassin conceded that he was prohibited from doing so under Eleventh Circuit precedent. Tassin thus challenged this Court's precedent to preserve the issue. The district court stated that it was preserving the record on those objections and noted that Tassin had also raised ineffective assistance of counsel issues in his § 2255 motion beyond the failure to file an appeal. Because a resentencing hearing under *Phillips* was not a resentencing hearing such that Tassin could raise new arguments, the district court found it lacked authority to rule on his objections and thus denied them.

In the alternative and "in the abundance of caution," the district court determined that it "would deny these objections on

merit" if Tassin were permitted to raise them.  The district court found that the underlying facts supported: (1) a five-level increase for distributing child pornography in exchange for valuable consideration; and (2) a four-level increase for portraying masochistic or sadistic conduct.

As to the special conditions of Tassin's supervised release, the district court stated that it would not change any of them but noted that Tassin was free to raise his objections once he was on supervised release.  The district court found that the special conditions were "absolutely appropriate," and some conditions were even required by statute.

The district court advised Tassin that he could challenge his counsel's failure to raise the three objections at his original sentencing in a § 2255 motion.  Tassin then confirmed that he understood that the district court was "restarting the clock" but could not "redo the whole thing."  Tassin was provided an opportunity to allocute, and the district court reiterated that Tassin's guidelines range was 210 to 262 months' imprisonment. After considering the parties' statements, the PSI, and the 18 U.S.C. § 3553(a) factors, the district court imposed the same sentence—240 months' imprisonment for Counts 2 and 3 to run concurrently and 15 years of supervised release with the same special conditions.

Tassin restated his objections to the five- and four-level enhancements and certain conditions of his supervised release.  He now appeals.

## II.    DISCUSSION

On appeal, Tassin raises five issues that we address in turn.

### A. Competence

Tassin argues the district court abused its discretion by not *sua sponte* inquiring into his competence.

To enter a guilty plea or proceed to trial, the defendant must "possess the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *United States v. Wingo*, 789 F.3d 1226, 1234–35 (11th Cir. 2015) (quotation marks omitted).[2]  The district court has an obligation to *sua sponte* hold a hearing if it has reasonable cause to believe that a defendant may be incompetent. *Id.* at 1236.  Reasonable cause is established where the district court has a bona fide doubt about the defendant's competence. *Id.*

This Court has identified three factors to determine whether there is a bona fide doubt about a defendant's competence: "(1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial [or at the plea colloquy]; and (3) prior medical opinion regarding the defendant's competence to stand trial [or enter a plea]." *Id.* (quotation marks omitted).  A court must

---

[2] We review a district court's failure to *sua sponte* order a hearing on the defendant's competence for abuse of discretion. *Wingo*, 789 F.3d at 1236.  We must affirm unless the district court made a clear error of judgment or applied the wrong legal standard. *United States v. Lyons*, 403 F.3d 1248, 1255 (11th Cir. 2005).

consider the aggregate of all three prongs, not each prong in a vacuum. *Id.* However, evidence under a single prong may be sufficient to establish a bona fide doubt about the defendant's competence. *Id.*

Here, the district court did not abuse its discretion in not *sua sponte* ordering a competency hearing because it lacked reasonable cause to believe that Tassin may have been incompetent. At the plea colloquy, there was no evidence of any irrational behavior and nothing in Tassin's demeanor to alert the district court of any competency issues. And Tassin provided no prior medical opinions of his competence.

Further, on multiple occasions, the district court inquired into Tassin's competence either directly or indirectly. Tassin confirmed to the district court that he (1) had never been treated for any mental illness or alcohol addiction; (2) was not under the influence of any drugs or alcohol; (3) had not ingested any drugs or alcohol in the last 48 hours; and (4) was not currently under the care or treatment of any physician, psychologist, or psychiatrist.

While Tassin admitted to being addicted to beer, there is nothing in the record or at the plea colloquy that would indicate that his former consumption was affecting his ability to understand the plea hearing proceedings.[3] Indeed, when Tassin was asked whether he believed he had a physical or mental condition or

---

[3] Notably, too, Tassin had been in custody since April 26, 2019, over seven weeks prior to his plea hearing on June 6, 2019.

illness that would prevent him from understanding what was going on at the plea hearing, he responded, "No, sir." *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true.").

In short, the record lacks any evidence that casts a bona fide doubt as to Tassin's competence to enter his plea, and Tassin and his attorney both confirmed his competence at the hearing. Thus, the district court did not abuse its discretion by accepting Tassin's guilty plea without *sua sponte* raising competence.[4]

### B. Objections Before Resentencing

Second, Tassin argues the district court erred by determining that it lacked authority to consider new sentencing objections when the district court resentenced him.

In *Phillips*, this Court outlined the remedy district courts are to provide upon concluding in a § 2255 proceeding that an out-of-time direct appeal in a criminal case is warranted. *Phillips*, 225 F.3d at 1201. The remedy consists of this four-step process:

> (1) the criminal judgment from which the out-of-time
> appeal is to be permitted should be vacated; (2) *the*

---

[4] The government also argues that the district court was not required to *sua sponte* inquire into Tassin's competency because Tassin invited any error when he and his counsel assured the district court that he was competent to proceed. Because there was no abuse of discretion, we need not address this argument.

*same sentence should then be reimposed*; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is [14] days, which is dictated by Rule 4(b)(1)(A)(i).

*Id.* (emphasis added). Under *Phillips*, the defendant "is entitled to an opportunity to allocute and have the court resentence him . . . [H]owever, [the defendant] is not entitled to an entirely new sentencing proceeding." *United States v. Doyle*, 857 F.3d 1115, 1121 (11th Cir. 2017). Relevant here, in *Doyle*, this Court determined that the district court properly refused to consider new objections and a sentencing memorandum filed by the defendant before the *Phillips* resentencing. *Id.* at 1118 n.2.

Here, consistent with *Phillips* and its progeny, the district court properly granted Tassin's § 2255 motion as to his out-of-time appeal claim, vacated the judgment, reimposed the same sentence, and advised Tassin of his appeal rights. The district court also correctly refused to consider Tassin's new objections to the PSI before resentencing. *See Doyle*, 857 F.3d at 1118 n.2. Tassin's argument that *Phillips* was wrongly decided is foreclosed under our prior panel precedent rule. *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011) (stating that a prior panel's holding is binding on all subsequent panels unless the Supreme Court or this Court sitting *en banc* overrules it). Thus, under our binding

precedent, the district court did not err in finding that Tassin could not raise new objections at resentencing.

## C. Procedural Reasonableness

Third, Tassin argues that the district court imposed a procedurally unreasonable sentence by applying two enhancements—distributing child pornography in exchange for valuable consideration under § 2G2.2(b)(3)(B) and involving material portraying sadistic or masochistic conduct under § 2G2.2(b)(4)(A).

Tassin contends that we should apply a *de novo* standard of review because the district court made an alternative ruling on the merits of these enhancement objections at resentencing. However, because Tassin failed to raise these objections at his original sentencing and his type of resentencing did not permit any new objections, we review his enhancement objections for plain error. *See United States v. Carpenter*, 803 F.3d 1224, 1237 (11th Cir. 2015). But regardless of which standard applies, Tassin's argument fails because he cannot establish error, let alone plain error.

As to the enhancement under § 2G2.2(b)(3)(B), a defendant shall receive a five-level increase if he distributed material involving the sexual exploitation of a minor for any valuable consideration, but not for pecuniary gain. U.S.S.G. § 2G2.2(b)(3)(B). This Court has held that "when a defendant trades child pornography in exchange for other child pornography, the defendant has engaged

in distribution for the receipt, or expectation of receipt, of a thing of value as provided in the 2000 version of [U.S.S.G.] § 2G2.2(b)(2)." *United States v. Bender*, 290 F.3d 1279, 1286 (11th Cir. 2002); *see also United States v. Vadnais*, 667 F.3d 1206, 1208 (11th Cir. 2012) (reiterating this rule under § 2G2.2(b)(3)(B)).

Here, Tassin entered a KiK chatroom and was told by another KiK user that he would be removed from the chatroom if he did not post child pornography. When Tassin initially did not post anything, he was removed from the room. Tassin re-entered the chatroom, was given the same warning, and then provided a link to a folder that contained over 100 images and videos of child pornography. Tassin also admitted in his factual proffer that he would use the images he had to trade with other KiK users in the group. Under our precedent, the district court correctly applied the five-level enhancement under § 2G2.2(b)(3)(B).

As to the enhancement under § 2G2.2(b)(4)(A), a defendant shall receive a four-level increase if the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence. U.S.S.G. § 2G2.2(b)(4)(A). This Court has held that material portrays sadistic or masochistic conduct "if the court determines that (1) the minor in the image is a young child and (2) the image portrays vaginal or anal penetration of a young child by an adult male." *United States v. Hall*, 312 F.3d 1250, 1263 (11th Cir. 2002); *see also United States v. Caro*, 309 F.3d 1348, 1352 (11th Cir. 2002) ("We have held that pictures of minors in bondage are sufficient to warrant the sadistic conduct enhancement.").

Tassin's factual proffer stated that the images and videos on his phone included adult men vaginally penetrating young girls. Further, the second PSI addendum, to which Tassin did not object, stated that Tassin also had a video on his phone depicting child pornography bondage. Thus, the district court correctly applied the four-level enhancement under U.S.S.G. § 2G2.2(b)(4)(A).

### D. Substantive Reasonableness

As to the fourth issue, Tassin argues the district court abused its discretion by imposing a substantively unreasonable sentence.

We examine whether the sentence is substantively unreasonable in light of the 18 U.S.C. § 3553(a) factors and the totality of the circumstances.[5] *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). The § 3553(a) factors include the nature and circumstances of the offense, the criminal history of the defendant, the seriousness of the crime, the promotion of respect for the law, just punishment, adequate deterrence, and protection of the public. *See* 18 U.S.C. § 3553(a). The party challenging the sentence bears the burden to show it is unreasonable. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018).

A district court abuses its discretion when it (1) fails to consider relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or

---

[5] We review the reasonableness of a sentence for abuse of discretion. *Cubero*, 754 F.3d at 892.

(3) commits a clear error of judgment by balancing the proper factors unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). We will reverse a sentence only "if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted).

Here, Tassin's sentence is substantively reasonable because the district court analyzed the § 3553(a) factors in detail. As to Tassin's history and characteristics, the district court expressly considered that Tassin consistently had shown remorse, had no criminal history, and had the decency to bring in half of the restitution payments owed to the two identified victims. But the district court also noted that the nature and circumstances of the offense were "deplorable," including that he had 123 videos of child pornography, some of which had bondage and victims under the age of 5, thus showing the district court's consideration of the nature and circumstances of the offense.

The fact that Tassin's total sentence of 240 months was within the guidelines range of 210 to 262 months further indicates that it was reasonable. *See United States v. Rogers*, 989 F.3d 1255, 1265 (11th Cir. 2021) (stating that a sentence being within the guidelines range is an indicator of reasonableness). Tassin's argument of unwarranted sentence disparities—based on citations

to the average sentence for someone convicted of murder and sentences for non-production child pornography cases without context or explanation—is unavailing because he has not shown similarly situated defendants. Therefore, the district court did not abuse its discretion in sentencing Tassin to 240 months' imprisonment on each count, to run concurrently, because Tassin's sentence was substantively reasonable based on the facts of the case and the 18 U.S.C. § 3553(a) factors.

### E. Special Conditions of Supervised Release

As to his fifth issue, Tassin argues that these three special conditions of his supervised release are overbroad: (1) the prohibition from possessing or using any data encryption technique or program; (2) the employer disclosure requirement; and (3) the prohibition on possession of material that depicts adults engaged in sexually explicit conduct.

We ordinarily review for abuse of discretion the validity of special conditions of supervised release. *United States v. Coglianese*, 34 F.4th 1002, 1010 (11th Cir. 2022). However, because Tassin did not object to these conditions at sentencing, we review for plain error. *See Carpenter*, 803 F.3d at 1237.

A district court may impose "any condition of supervised release it deems appropriate so long as it comports with the factors enumerated in § 3553(a)." *Coglianese*, 34 F.4th at 1010 (quotation marks omitted). A valid special condition "must (1) be reasonably related to a § 3553(a) factor; (2) involve no greater deprivation of

liberty than is reasonably necessary for the purposes set forth in § 3553(a); and (3) be consistent with any pertinent policy statements issued by the sentencing commission." *Id.* (quotation marks omitted). Further, special conditions of supervised release "are not vague and overbroad when they are undeniably related to the sentencing factors." *United States v. Nash*, 438 F.3d 1302, 1307 (11th Cir. 2006) (quotation marks omitted).

In *Coglianese*, the defendant pled guilty to, *inter alia*, receipt and transportation of child pornography. *Coglianese*, 34 F.4th at 1006. The district court imposed special conditions of supervised release prohibiting the defendant from (1) using or possessing a computer or a device capable of connecting to the internet without prior approval from the probation office, and (2) possessing an electronic data storage medium or any other data encryption technique or program. *Id.* at 1007. On appeal, the defendant argued that the restrictions were overbroad. *Id.* at 1009.

This Court disagreed and affirmed the defendant's special conditions of supervised release because use of the internet "was the means by which he committed his crimes," and "he used devices capable of storing and transmitting computer-based or digital information in the commission of the offenses to which he pled guilty." *Id.* at 1011, 1013. Further, the district court noted that the defendant could seek and obtain approval from the probation office to use computers and the internet for legitimate purposes. *Id.* at 1013.

Similarly, in *Carpenter*, this Court affirmed a defendant's sentence where (1) the defendant pled guilty to possessing child pornography, and (2) the district court imposed a special condition of supervised release that the defendant was prohibited from accessing "depictions of minors or adults engaged in sexually explicit conduct." *Carpenter*, 803 F.3d at 1229, 1232. In the district court, the defendant failed to object specifically to that condition, so this Court reviewed for plain error. *Id.* at 1238–39. Because no controlling authority from this Court or the Supreme Court established that the district court erred in imposing the condition, we affirmed the sentence. *Id.* at 1240–41.

We find no principled or material difference between the computer conditions in this case and the ones in *Coglianese*. Two special conditions—(1) prohibiting Tassin from possessing or using any data encryption technique or program and (2) allowing his computer related restrictions to be disclosed to any employer or potential employer—are central to both his offense, history, and characteristics. Tassin used a computer and cell phone to access an online chatroom to commit his crimes. Further, as a former IT professional, Tassin is well-versed in the use of such technology, as evidenced by his custom computer tower. And if the situation arises where Tassin needs data encryption technology for his job, he can file a motion to modify his supervised release conditions, which the district court pointed out at resentencing. Thus, Tassin has shown no error, let alone plain error.

As to the special condition prohibiting Tassin from possessing materials depicting minors or adults engaged in sexually explicit conduct, Tassin specifically objects that the condition is overbroad because it includes adults. There is no plain error for the same reasons laid out in *Carpenter*. Because there is no Supreme Court or Eleventh Circuit precedent establishing that such a condition is impermissible, we find no plain error in imposing this special condition of supervised release. Further, because Tassin does not point to any authority establishing that the condition is error, we find no abuse of discretion.

## III.    CONCLUSION

For the above reasons, we affirm defendant Tassin's convictions and sentences.

**AFFIRMED.**